IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
MAR - 4 2022
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

JESUS CASIANO, §
    Plaintiff, §
vs. §
§ Civil Action No.
DENIS MCDONOUGH, SECRETARY OF §
THE UNITED STATES DEPARTMENT § SA22CA0216
OF VETERANS AFFAIRS, §
    Defendant. §

## PLAINTIFF'S ORGINAL COMPLAINT

JESUS CASIANO, Plaintiff herein, files this his Original Complaint, complaining of DENIS MCDONOGUH, SECRETARY OF THE UNITED STATES DEPARMENT OF VETERANS AFFAIRS, Defendant herein, and in support thereof would show the Court as follows:

**I.**
**JURISDICTION and VENUE**

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 USC §§ 2000e et seq.) Employment Discrimination on the basis of national origin (Mexican), race (Mexican-American), disparate treatment in violation of Title VII of the Civil Rights Act of 1964, as amended (42 USC §§ 2000e et seq.) and 29 CFR § 1607.1, disability in violation of the Rehabilitation Act of 1973; and Retaliation on the basis of making a claim and opposing of a practice made to be unlawful employment practice in violation of 42 U.S. Code § 2000e-3 and subjecting Plaintiff to harassment and hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

2. Jurisdiction in this Court is proper under 28 U.S.C. § 1331.

3. Venue in this Court is proper under 28 U.S.C. § 1391 (b)(2) and (c)(2) because the Defendant is subject to personal jurisdiction in this judicial district and because this judicial district is where a substantial part of the events or omissions giving rise to the asserted claims occurred.

## II.
## PARTIES

4. Plaintiff is a Mexican American male and was forty-six (46) years old at the time that the incidents of discrimination occurred.

5. Defendant is a federal agency and is known as the Veterans Administration under the United States Department of Veterans Affairs, and may be served by delivering the Summons and a copy of Plaintiff's Original Complaint to Denis McDonough, Secretary of the United States Department of Veteran Affairs at 810 Vermont Avenue, NW, Washington, DC, 20420.

## III.
## CONDITIONS PRECEDENT TO SUIT

### A. Exhaustion of Administrative Remedies

6. Plaintiff filed an internal EEO claim on or about June 9, 2017, claiming discrimination based on disability, retaliation, and subjection to hostile work environment.

7. On or about September 21, 2017, Plaintiff filed for a request for a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Judge (AJ).

8. On December 21, 2020, EEOC AJ denied Plaintiff's Motion for Extension of Discovery.

9. On January 7, 2020, the EEOC AJ granted Plaintiff's Motion to Include Similar and Like Claims to include race, national origin, and disparate treatment discrimination.

10. The EEOC AJ remanded the claim to Defendant to conduct a Supplemental Investigation on race, national origin, and disparate treatment discrimination and allowed Defendant six (6) months to complete the Supplemental Investigation. Defendant failed to complete the Supplemental Investigation on a timely basis and the EEOC AJ granted a Partial Granting and Denial of Sanction against Defendant.

11. On October 7, 2021, EEOC AJ denied Plaintiff's Motion to Compel Defendant to produce and respond to Plaintiff's Discovery. Defendant failed to response sufficiently to Plaintiff's Discovery requests.

12. On November 3, 2021, Defendant filed a Motion for Summary Judgment (MSJ). Plaintiff had not received a copy of the Defendant's deposition of Plaintiff. On November 17, 2021, Plaintiff replied to Defendant's MSJ on November 17, 2021.

13. On December 9, 2021, EEOC AJ dismissed Plaintiff's claim. On December 15, 2021, Plaintiff received Defendant's Final Agency Decision, and timely filed this his complaint.

14. Plaintiff claims that memory recall of the dates of sequence of events and incidents was and is difficult due to the fact that the Defendant and the EEOC took approximately four (4) years to process his claims.

15. All conditions precedent have been performed or have occurred.

B. **Statement of Claims**

16. On March 20, 2016, Plaintiff was hired by Defendant on March 20, 2016, as a Materials Handler with a salary level of WG-01, fifteen dollars and eighty-even cents ($15.87) an hour. Plaintiff is a United States Veteran and is under a protected class. Plaintiff was assigned to

Receiving Warehouse, Logistic. The Logistic included the following departments Receiving Warehouse included the Mailroom and Print Shop, Sterile Processing Department, administration included, Chief of Logistics Cecilio Barnett, Assistant Chief of Logistics Lamarr Price, and Inventory Managers.

17. Plaintiff submitted CA-7 reports (duty status reports) to Wallace Reynolds from the OWCP, dated August 16, 2016, and August 23, 2016. The CA-7 report states Plaintiff had a "lumbar sprain" and "lumbar radiculopathy" as a result of a work-related injury which occurred on August 16, 2016. Plaintiff had limitations with lifting, sitting, standing, walking, climbing, kneeling, bending/stooping, twisting, pulling/pushing, grasping, fine manipulation, reaching above shoulder, driving a vehicle, operating machinery, temperature extremes, high humidity, chemicals/solvents, fumes and dust; and Plaintiff should stand and walk a few minutes after every thirty minutes of sitting. Plaintiff was taking the following medications: Sertraline (Anxiety, Depression and Insomnia), Buspirone (Bipolar depression), and Propranolol (high blood pressure intended to keep Plaintiff clam) which would cause him to be drowsy, more specifically the Sertraline which Plaintiff was taking at nights. Plaintiff had 100% percent military disability related to anxieties associated with Post Traumatic Stress Disorder.

18. Plaintiff had a disability and medical restrictions at the time he was subjected to discrimination.

19. Plaintiff's job responsibilities at the time discrimination occurred were: Process paperwork that included purchase orders, turn-ins, and other daily transactions associated with the

warehouse, filing paperwork, and occasionally escort Compensated Work Therapy for delivery of supplies.

20. No other similarly situated employees were treated adversely as Plaintiff nor were they subjected to disparate treatment. Neither Mitchell (co-worker) nor Reynolds were subjected to any transfers to other departments as a result of their discriminatory actions and conduct towards Plaintiff.

21. Defendant was aware of Reynolds' problems with other employees and his [Reynolds] anger outbursts. In an incident between Reynolds and Ms. Yolanda Herrera, Mailroom Supervisor, Mexican American female, Reynolds got extremely upset at Ms. Herrera and yelled out "fuck". Ms. Herrera was merely drawing to Reynolds' attention a package that had a Purchase Order. Any package with a Purchase Order has to be received in Vista. Vista is the system that the Defendant uses to keep track/accountability of purchased orders that have been received and that are still outstanding. It ensures that once the supplies/services are received and accepted, the vendor payment will be released. The system tracks when, who, time, and date, it was processed and received, and vendor payment was approved for payment. This would insure the vendor could be paid and keep track of what has been received for accountability instead of processing this through the Mailroom which results in the vendor not being paid and the Defendant's unnecessary time to have employees correct the problem. Ms. Herrera turned to Plaintiff and in Spanish asked Plaintiff if he heard and witnessed what just occurred. Ms. Herrera did not file an EEO complaint but did file a union grievance against Reynolds.

22. Wallace Reynolds then directed Plaintiff not to speak Spanish.

5

23. Defendant has no policy to deny Plaintiff the right to speak Spanish in the workplace. Defendant expects that if an order is given, it should be followed. Defendant's employees are predominately of Mexican American race and the primary Veterans served by the Defendant are predominately of Mexican American race.

24. Defendant was aware of Wallace Reynolds' discriminatory conduct and took no actions against Reynolds. The day after the incident with Yolanda Herrera, Lamarr Price was informed by Kirk Mitchell of Wallace Reynolds' creation of a hostile work environment and of Reynolds' threatening employees' employment and of his [Reynolds] anger outbursts.

25. Kirk Mitchell told Plaintiff that he [Plaintiff] should terminate his employment and "go sale oranges on the side of the road like his people do". This statement was a disparaging discriminatory statement against Plaintiff based on race and national origin.

26. On or about May 15, 2017, Plaintiff made a protected disclosure of what he [Plaintiff] believed was an unlawful employment practice when he [Plaintiff] reported Kirk Mitchell's statement and harassment to Wallace Reynolds. Plaintiff informed Reynolds of Mitchell's action to obtain statements from his[Plaintiff] co-workers stating he [Plaintiff] was not pulling his [Plaintiff] weight at work. Reynolds was informed of allegations made by Mitchell claiming Plaintiff was not pulling his weight and Mitchell's statement of telling Plaintiff to go sell oranges on the side of the road. Plaintiff made the same protected disclosures to Lamarr Price at a later date.

27. Kirk Mitchell did inform Lamarr Price of his [Mitchell] own discriminatory and racist remarks he [Mitchell] made to Plaintiff.

28. Neither Reynolds nor Price took any action to investigate Plaintiff's allegations against Mitchell.

29. Reynolds retaliated against Plaintiff for reporting Mitchell's discriminatory racist statement and conduct and told Plaintiff, that he [Plaintiff] "should just quit because nobody wants you here because you are not pulling your weight, all of your coworkers are in agreement" and transferred Plaintiff to the Sterile Processing Department.

30. Defendant's explanation for the transfer is pretext, in that, Defendant explained that the transfer was based on Plaintiff's disability needs; and also explained that the transfer was based on a business need because of a staff shortage. It is evident, that Defendant's actions to transfer Plaintiff was to protect Reynolds and separate Reynolds from Plaintiff, and cover Defendant's failure to initiate any investigation of Plaintiff's disclosures of harassment and subjection to hostile work environment even after Mitchell confirmed to Price that Reynolds was creating a hostile work environment.

31. On May 16, 2017, Wallace Reynolds denied Plaintiff's request to see his [Plaintiff] doctor Dr. Arnulfo Carrasco, a pain medicine specialist.

32. On May 17, 20217, while waiting for the transfer paperwork to be completed, Plaintiff was sent to Pharmacy Department to oversee pill destruction of controlled substances.

33. Plaintiff's responsibilities at the Sterile Processing Department (SPD) included the task and job of folding process paperwork; answering phones; assist SPD with Personal Protective Equipment to include packaged items such as cotton balls; lancets and trash bags; and Controlled Drug Inventories. Plaintiff's supervisor at the SPD was Stacey Ward.

34. In a meeting with Cecilio Barnett and Stacey Ward, Ward informed Plaintiff that Wallace Reynolds would not supervise him. This agreement was violated by Reynolds, and neither Ward nor Barnett took any actions against Reynolds after reporting that Reynolds kicked Plaintiff out of the Mailroom, denied the use of the bathroom by the Warehouse, and directed Plaintiff to return the bathroom key by the Warehouse, and to return the lock to Reynolds.

35. Lamarr Price then transferred Plaintiff to the night shift. On or about June 7, 2017, Lamarr Price, Assistant Chief of Logistics, changed the Plaintiff's duty hours from 7:30 am through 4:00 pm to 12:00 am through 8:00 am.

36. Defendant was aware that Plaintiff's transfer to night shift was a violation of Plaintiff's medical restrictions. Plaintiff requested reasonable accommodations and an opportunity to see his [Plaintiff] doctor for a follow up appointment scheduled for July 17, 2017. Lamarr Price denied Plaintiff's requests.

37. Plaintiff discussed with Lamarr Price, his [Plaintiff] reasonable accommodations request, concerns about his [Plaintiff] reassignment to third shift; the medications Plaintiff is required to take at night would cause drowsiness and that he [Plaintiff] would not be able to function, and that before taking the SPD position he [Plaintiff] needed to see his doctor for a follow-up on July 17, 2017.

38. Plaintiff informed Lamarr Price that he was taking Sertraline (Anxiety, Depression and Insomnia), Buspirone (Bipolar depression), and Propranolol (high blood pressure and to calm Plaintiff). In a June 8, 2017 email to Lamarr Price and Amy Knoell, and copied to Union President Don Edge, and verbally to Rikkitta Jones, EEO Representative, Plaintiff informed them that he

was under medications which he was required to take at night which made him drowsy. Plaintiff asked Price to reconsider the change and consider another job offer, other than the night shift; and Price told Plaintiff, he "had until tomorrow to sign the offer for night shift".

39. Lamarr Price relied upon Amy Knoell's, Workers Compensation Coordinator, to support Plaintiff's transfer to night shift. Knoell informed Price that there were no medical restrictions that would prevent Plaintiff from working in a different shift.

40. Amy Knoell had no authority nor medical knowledge to make any recommendations on Plaintiff's transfer to a night shift. This was not merely a transfer to another shift, the transfer was to a night shift which violated Plaintiff's medical restrictions. Knoell as the Workers Compensation Coordinator was aware of Plaintiff's medical restrictions and medications. Price considered Knoell to be the expert on this subject matter (transfers) and received advice from Knoell.

41. Plaintiff was forced to see Dr. Pablo Gonzalez, Psychiatrist, and was placed on FMLA due to the harassment and hostile work environment Plaintiff was being subjected to. Plaintiff began his FMLA on or about June 10, 2017. It is evident that Defendant's actions were retaliatory, continued harassment and subjection to hostile work environment, and discrimination based on Plaintiff's disabling medical condition, race and national origin.

42. In late July or early August 2017, upon returning from FLMA, Plaintiff was transferred to the Prosthetics Department. Plaintiff's supervisor at the Prosthetics was Elizabeth Shellman.

43. Defendant assigned Plaintiff to a 3x3 area with a two (2) foot stool to sit on and was denied access to the Prosthetics systems and had no equipment to work with. The transfer and

9

JESUS CASIANO
V.
DENIS MCDONOUGH,
SECRETARY UNITED STATES DEPARTMENT
OF VETERANS AFFAIRS
PLAINTIFF'S ORIGINAL COMPLAINT

assignment violated Plaintiff's medical restrictions; Plaintiff could not sit on a stool for any period of time.

44. The Prosthetics transfer was a temporary job and it was apparent that there was no job for Plaintiff in the Prosthetics Department. Plaintiff had no work area, no computer and no chair. Plaintiff remained in the Prosthetics Department for a couple of days until the acting chief Elizabeth Shellman advised Plaintiff that it was better if Plaintiff returned to Logistics, Plaintiff's original department.

45. Elizabeth Shellman intentionally made false statements to Cecilio Barnett, Chief of Logistics and to Assistant Chief, Lamarr Price about Plaintiff's work production. Barnett acknowledged that Elizabeth Shellman had complained that Plaintiff could not be found and that when present, Plaintiff was not helping. Plaintiff was not provided any equipment, was stuck in a 3x3 working area, and given a stool to sit on. Clearly, Plaintiff's medical restrictions were violated.

46. Cecilio Barnett reassigned Plaintiff from Prosthetics Department back to Sterile Processing Department (SPD).

47. Cecilio Barnett instructed Ingrid Brown, in front of Plaintiff to inform the staff about Plaintiff's work limitations to which Brown complied and informed Plaintiff's co-workers of Plaintiff's work limitations. Defendant's actions were retaliatory, continued harassment and subjection to hostile work environment, and discrimination based on Plaintiff's disabling medical condition, race and national origin. Cecilio Barnett violated Plaintiff's HIPPA confidentiality

associated with the release of Plaintiff's medical information. Brown followed Barnett's directions.

48. On or about August 28, 2017, Barnett reassigned the Plaintiff from the Prosthetics Unit back to the SPD area. Plaintiff was assigned to process paperwork, answer phones, assist SPD with Personal Protective Equipment to include packaged items such as cotton balls, lancets and trash bags, and conduct Controlled Drug Inventories.

49. In late August or early September 2017, Amy Knoell instructed Plaintiff "to report to Cynthia J. Vahle, Administrative Office in Education Service to begin this light duty assignment on Monday, September 1, 2017 NLT 0730, and to review the duties assigned, indicate your acceptance of this position and sign the offer prior to beginning the work shift on the date noted above. You must provide a signed copy of the job offer to the WCP office so that they may forward it to OWCP. Cecilio and Cynthia signed on 9/14/2017 to greet customers professionally and courteously; answer telephones, provide guidance, transfer the call, or take messages; type/data entry; use routine office equipment (computer, printer, copier/fax/scanner); assist staff & nurses, as appropriate, i.e., schedule trainings classes, and update documents/databases."

50. On an unspecified date, the Plaintiff heard Amy Knoell say "Fuck, again," when he [Plaintiff] contacted her [Knoell] again about trying to find a different position and/or work area. On or about September 21, 2017, via email, Plaintiff informed Betty Chambers, Supervisor, Workers' Compensation Programs, requesting to be reassigned to another Workers Compensation liaison, because, Amy Knoell withheld information or gave Plaintiff incorrect information associated with Plaintiff's OWCP claim; that on several occasions Knoell told

Plaintiff, she would have to send Plaintiff home if he could not perform his job; and in one incident Knoell, in front of other employees, said "Fucking tired of Jesus".

51. On November 13, 2017, Plaintiff signed the limited duty job offer moving to the Contracting Department to Review purchase requests for sufficiency and completeness; serving as a conduit for information flow between the requiring activity and the contracting staff; and supporting the management team with minor administrative actions as needed.

52. Plaintiff made a protected disclosure to Stacy Ward and informed Ward that he [Plaintiff] did not feel safe in the SPD division area because he kept expecting someone to come through the door and attack him.

53. During the transfers, Plaintiff was subjected to continued harassment and subjection to hostile work environment. Ward directed Plaintiff to return the assigned warehouse lock. Cecilio Barnett, Chief of Logistics directed Plaintiff to return the female bathroom key in the Logistics Department. The bathroom key for the female bathroom was used by all Logistics warehouse employees and Plaintiff was still in the Logistics Department. Plaintiff was directed by Wallace Reynolds, Stacey Ward, Cecilio Barnett, and Lamarr Price not to have his [Plaintiff] lunch in the Mailroom. Plaintiff had been eating his lunch in the mailroom since he was employed by Defendant and that the issue of eating in the Mailroom did not become a problem until Plaintiff became engaged in making protected disclosures.

54. Lamarr Price participated in each of Plaintiff's transfers and engaged in micromanaging Plaintiff's work activities. Price directed Plaintiff to report to Stacey Ward than to Ingrid Brown. Price instructed Ward and Brown to report when Plaintiff would arrive to work; when Plaintiff

would take his morning, lunch, afternoon, and bathroom breaks. Plaintiff was denied the use of the closest bathroom because it was located in Wallace Reynolds' area he supervised. Price was aware and had knowledge of Mitchell's discriminatory statement and of Reynolds harassment toward Plaintiff.

55. Plaintiff informed Lamarr Price of Wallace Reynolds' conduct, actions, racially motivated statements and informed Price the reason he [Plaintiff] reported these issues to him [Price] was because Reynolds' conduct had been reported and no actions were taken against Reynolds.

56. Wallace Reynolds disclosed to Plaintiff that management officials were aware of his [Reynolds] condition and medication for his [Reynolds] anger. Reynolds was treated more favorably than Plaintiff and other Mexican American employees.

57. Cecilio Barnett, Chief of Logistics, admitted in his EEO's interview of August 2, 2017, that Plaintiff had disclosed to him[Barnett] about the harassment by Wallace Reynolds.

58. In late August or early September 2017, Plaintiff contacted Defendant's Human Resources, Sonia Lozano, Employee/Labor Relations Specialist and Rudy Ruiz, Human Resources Deputy Officer and reported the claims and incidents identified above, Paragraphs 16-57. Defendant's Human Resources conducted no investigation of Plaintiff's protected disclosures of discrimination.

59. Defendant's Employee Policy Handbook addresses matters related to harassment and discrimination as follows: "VA does not tolerate unlawful discrimination, workplace harassment or retaliation based on race, color, religion, national origin, sex (including gender identity,

13

JESUS CASIANO
V.
DENIS MCDONOUGH,
SECRETARY UNITED STATES DEPARTMENT
OF VETERANS AFFAIRS
PLAINTIFF'S ORIGINAL COMPLAINT

transgender status, sexual orientation and pregnancy), age (40 or older), disability, genetic information, marital status, parental status, political affiliation or retaliation for opposing discriminatory practices or participating in the discrimination-complaint process". Defendant knowingly violated its own policy in regards to Defendant's conduct, treatment and actions taken towards Plaintiff.

60. The parties identified and involved in the transfers of the Plaintiff were either an Anglo or African American male or female. The parties identified were aware of Plaintiff's medical restrictions and disabling condition. The parties identified were aware of and had knowledge that Plaintiff was on light duty. The parties identified were aware of or had the knowledge as Supervisors and Management officials, that Plaintiff engaged in protected activity of disclosing unlawful employment practices of discrimination.

61. In late February, early March 2017, Wallace and Lamarr denied Plaintiff's Annual Leave to attend his son's naval nuclear program graduation phases and daughter's wedding. They stated that Plaintiff could only attend one function. The union had to get involved to approve both incidents.

62. In July or August 2017, Plaintiff was transferred back to the Sterile Processing Department where all the harassment and subjection to discrimination began. Defendant's explanations that the transfers were because of workforce shortage and because of Plaintiff's disability are pretextual.

63. Plaintiff is entitled to relief for Defendant's discriminatory conduct and actions of race and national origin, disability, and disparate treatment discrimination; and retaliation and harassment and subjection to a hostile work environment.

## IV.
## CAUSES OF ACTION

64. Plaintiff incorporates all factual allegations contained in the foregoing paragraphs 4 through 63, inclusive, above by reference as if fully set forth at length herein.

A. Title VII employment discrimination

65. The conduct of Defendant constitutes a violation of the Equal Employment Opportunity Acts prohibitions of discrimination based upon Race (Mexican); and National Origin (Mexican American).

66. This violation caused Plaintiff to suffer damages.

B. Retaliation and Hostile Work Environment.

67. Defendants engaged in retaliation and conduct creating a hostile work environment to Plaintiff, causing him economic and other damages.

C. Harassment

68. Defendant has engaged in harassment against Plaintiff, causing him economic and other damages.

D. Disability Discrimination

69. Defendant has engaged in disability discrimination against Plaintiff, causing him economic and other damages.

E. Disparate Treatment Discrimination

70. Defendant has engaged in disparate treatment discrimination against Plaintiff causing him economic and other damages.

## V.
## DAMAGES

71. Defendant's acts and omissions have caused Plaintiff to suffer damages including past and future lost earnings (including back pay and front pay), past and future injury to reputation, and past and future mental anguish.

72. Plaintiff seeks recovery of these damages from Defendant.

## VI.
## ATTORNEY FEES

73. Defendant's acts and omissions have caused Plaintiff to incur attorney fees and court costs. Plaintiff is entitled to an award of attorney's fees and court costs under Title VII, 42 U.S.C. § 2000e-5(k). Plaintiff seeks recovery from Defendant all attorney's fees and court costs through judgment in this court with additional contingent amounts in the event of post-judgment and appellate proceedings.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendant be cited to appear and answer herein to Plaintiff's Original Complaint, and that upon final trial, this court enter a judgment awarding the Plaintiff all of the aforementioned damages, attorney's fees, costs of court, and prejudgment and post-judgment interest. Plaintiff also asks for

such other and further relief, whether legal or equitable, to which Plaintiff may be justly entitled.

Plaintiff requests a jury trial.

Respectfully submitted,

LAW OFFICES OF ARTHUR G. VEGA
P.O. Box 461106
San Antonio, Texas 78246-1106
Telephone Number: (210) 379-3111
E-mail: artavega@yahoo.com

/s/ Arthur G. Vega
ARTHUR G. VEGA
State Bar No. 20533600

ATTORNEY FOR PLAINTIFF